J-S37015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                :                  PENNSYLVANIA
                                :

               v.                    :

                                :

JOSE BENITEZ                     :
                                :

             Appellant      :     No. 2114 EDA 2022

Appeal from the Judgment of Sentence Entered March 18, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0005816-2017

BEFORE:    BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 22, 2024**

Jose Benitez (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of possessing a controlled substance with the intent to deliver (PWID), possession of a controlled substance, possession of drug paraphernalia, and criminal conspiracy.[1] We affirm.

On August 25, 2017, the Commonwealth charged Appellant and Yasser Almanzar (Almanzar) with the above crimes. Appellant and Almanzar each filed pre-trial motions seeking to suppress evidence obtained from a warrantless vehicle search. On April 29, 2019, the trial court conducted a joint suppression hearing.

---

[1] 35 P.S. § 780-113(a)(30), (16), (32), and 18 Pa.C.S. § 903, respectively.

## Suppression Hearing

Philadelphia Police Sergeant Brian Myers testified that on May 22, 2017, he conducted surveillance of 3329 Bleigh Avenue in response to "numerous complaints for that address of numerous Hispanic males coming in and out of the property, carrying packages and different cars leaving the area."  N.T., 4/29/19, at 28.  Although Sergeant Myers confirmed the activity, he did not see Appellant or Almanzar during the May 22, 2017 surveillance.  *Id.* at 42.

In a prior decision, this Court explained:

> On May 24, 2017, Sergeant Myers returned to 3329 Bleigh Avenue to conduct additional surveillance.  Sergeant Myers received assistance from Officer Edward Slater, who was conducting surveillance of [a] white Jeep at 2204 Stanwood Street.  Officer Slater observed [Appellant] exit the property and walk to the Jeep. At the same time, Mr. Almanzar arrived in a white Chevrolet Malibu, which he "backed up to the white Jeep, so the trunk of the Chevy was facing the trunk of the" Jeep.  [**Appellant**] **retrieved a large, green bag from the trunk of the Jeep and transferred it into the trunk of the Chevrolet**.  Mr. Almanzar drove off in the Chevrolet, and [Appellant] subsequently left in the Jeep.
>
> Officer Slater followed the Chevrolet, and Sergeant Myers joined the pursuit.  Once the Chevrolet pulled over on the 3000 block of Gilford Street, Sergeant Myers decided to stop the vehicle for further investigation.  A search of the trunk revealed 1,150 bundles of heroin inside [a] green bag.  Sergeant Myers contacted a back-up officer and ordered him to conduct a stop of [Appellant] in the Jeep.  The back-up officer stopped the Jeep, but did not discover any drugs.
>
> ***
>
> Officer Slater testified that he had served as a police officer for twelve years with two-and-a-half years of narcotics work.  Officer Slater had conducted approximately ten narcotics investigations in the neighborhood at issue, "usually pertaining to bag houses of heroin."  Although Officer Slater observed [Appellant] retrieve the

bag from the trunk of the Jeep and transfer it to the Chevrolet, he did not observe any drugs or the exchange of money.

Mr. Almanzar also testified, stating he had received permission to drive the Chevrolet from a man named "Jose." Although Jose was "not really a close friend," Mr. Almanzar asked to borrow the Chevrolet after seeing Jose "one day at the barbershop." Mr. Almanzar told Jose he "needed to pick up baby clothes," and Jose agreed that he could use the car for the day.

**Commonwealth v. Benitez**, No. 1462 EDA 2019, unpublished memorandum at 1-2 (Pa. Super. filed Sept. 15, 2020) (emphasis added, citations to notes of testimony omitted).

At the conclusion of the suppression hearing, the trial court found "the evidence to be insufficient to meet probable cause for stopping the vehicle." N.T., 4/29/19, at 119. Thus, the court granted Appellant's motion to suppress evidence obtained from the vehicle search. The Commonwealth appealed.[2]

On appeal, we determined that Appellant "did not even occupy the Chevrolet at the time of the search. Absent more, [Appellant] had no demonstrable, reasonably cognizable expectation of privacy in a vehicle he did not own and for which he could show no authority to occupy or operate." **Benitez**, **supra** at 4. We concluded the trial court "should have denied [Appellant's] suppression motion concerning the contraband recovered from

---

[2] The trial court also granted Almanzar's suppression motion. The Commonwealth appealed, and this Court affirmed the grant of suppression. **Commonwealth v. Almanzar**, No. 1463 EDA 2019, unpublished memorandum at 6 (Pa. Super. filed Sept. 15, 2020) (agreeing "officers lacked facts sufficient to warrant a person of reasonable caution in the belief that [Almanzar] was committing a crime").

the Chevrolet." *Id.* Accordingly, we reversed the order granting suppression and remanded for further proceedings.

Following remand, Appellant and the Commonwealth declined recusal of the trial court judge. Therefore, the judge who presided at the suppression hearing also presided at Appellant's bench trial.

Bench Trial

The trial court held Appellant's bench trial on December 8, 2021. The parties stipulated to the admission of the transcript from the suppression hearing, which the trial court admitted as Exhibit C-1. N.T., 12/8/21, at 11. The parties also stipulated to the admission of Commonwealth's Exhibit C-2 ("collectively being the property receipts"), and Exhibit C-3 ("being the seizure analysis"). *Id.* at 11-13. The Commonwealth explained:

> [Exhibit] C-2 is property receipts that if Officer Myers were to testify, he would testify he made these recoveries from Property Receipts 3306701 through ending in 707. He filled these out and they correspond with [Exhibit] C-3, which is the seizure analysis that if George Daisy were to testify, he is a forensic scientist for the Philadelphia Police Chemistry Unit[, who] filled out a lab report indicating Property Receipt 3306701 contained 14,483 packets labeled "Westbrook" off-white powder. These items were analyzed and tested positive for heroin.

*Id.* at 12-13. With the "stipulations on the record, and [exhibits] moved into evidence," the Commonwealth rested. *Id.* at 14.

The defense presented testimony from Appellant's wife, Jennifer Martinez. Ms. Martinez testified that on May 24, 2017, she needed to use the couple's one car, so Appellant borrowed the white Jeep from "his friend[, who

- 4 -

like Appellant, was] named Jose." *Id.* at 18. Ms. Martinez stated, "I just know him as Jose. I think it's Santiago." *Id.* She also testified to giving police permission to search the couple's home, where police recovered approximately $5,000 in cash. *Id.* at 20-24. According to Ms. Martinez, she and Appellant got the money from "selling a car 15 days prior." *Id.* at 21.

Appellant also testified. Like Ms. Martinez, Appellant testified that he borrowed the Jeep from his friend, Jose Santiago. *Id.* at 26, 29.[3] Appellant stated that if he "had known" what was in the Jeep, he "wouldn't have even touched it." *Id.* at 26. Appellant explained:

> I took [the Jeep] back home and I parked it there. I just parked it there because it was still about 30 minutes before I had to go pick up the kids. So what I did is I put the [J]eep in front of my house and[,] about 30 minutes later[,] Almanzar called me to do a favor for him and to open the [J]eep.

*Id.* at 26-27.

Defense counsel asked Appellant:

[COUNSEL:]   Where was Mr. Almanzar when you opened up the [J]eep?

A   He was on the side behind the car and the [J]eep.

Q   Was there a bag in the [J]eep?

A   Yes.

_____

[3] The Commonwealth asked Appellant if he recalled Almanzar testifying at the suppression hearing that "the same person let [Almanzar] borrow his car where [Almanzar] was caught with the drugs?" N.T., 12/8/21, at 33. Appellant responded: "No, I mean, I was paying attention about me. I don't know." *Id.*

| Q | Who picked the bag up from the [J]eep? |
| A | He opened the trunk and he picked up the bag and he put it in his car. |
| Q | So he picked up the bag from the [J]eep and put it in the trunk of his car? |
| A | Yes. |
| Q | Did you have any idea or did you know what was in that bag? |
| A | No, no. |

*Id.* at 27-28.

After Appellant testified, counsel made closing arguments, and the trial court called a brief recess "to review the notes of testimony." *Id.* at 48. When the court returned, it announced that it found Appellant "guilty of all charges." *Id.* at 52.

On March 18, 2022, the trial court sentenced Appellant to an aggregate term of five years' probation for PWID and conspiracy, "concurrent with no further penalty on the remaining charges." Trial Court Opinion (TCO), 12/15/22, at 1. Appellant filed a timely post-sentence motion, which the trial court denied on July 27, 2022. Appellant timely appealed. On September 16, 2022, Appellant filed a court-ordered concise statement.[4]

_____

[4] The trial court ordered Appellant "to provide this [c]ourt with a Statement of the Matters Complained of on Appeal within twenty (21) days of the date of this Order." Order, 8/18/22. Appellant's counsel filed the concise statement approximately one week late, on September 16, 2022. As the trial court did not deem the statement untimely and addressed Appellant's issue, we proceed as if the statement was timely filed. ***Commonwealth v. Andrews***, 213 A.3d
*(Footnote Continued Next Page)*

Appellant presents one question for review:

Was the testimony presented sufficient to sustain the conviction for [PWID]?

Appellant's Brief at 6.

When reviewing a sufficiency claim, we determine

whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Williams*, 302 A.3d 117, 120 (Pa. Super. 2023) (citation omitted).

Appellant challenges his conviction of PWID, which is defined as:

the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating,

_____

1004, 1010 (Pa. Super. 2019) (declining to find waiver or remand where the "trial court did not comment on the untimely filing of [the a]ppellant's Rule 1925(b) statement and, in fact, it addressed all of the issues raised therein").

- 7 -

delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

To sustain a PWID conviction, "the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it." ***Commonwealth v. Bricker***, 882 A.2d 1008, 1015 (Pa. Super. 2005) (citation omitted).

> In determining whether there is sufficient evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence. ***Commonwealth v. Drummond***, 775 A.2d 849, 853-54 (Pa. Super. 2001) (citation omitted). Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. ***Commonwealth v. Kirkland***, 831 A.2d 607, 610 (Pa. Super. 2003) (citation omitted).

***Id.***

Appellant argues the evidence was insufficient because the "quantum of the evidence is [Appellant] moved a package from one vehicle to another." Appellant's Brief at 14. He claims there was no evidence he knew "of the contraband inside the package. Further, there was no intent to exercise conscious dominion of the contraband. Despite law enforcement having prior information regarding criminal activity, it did not relate to Appellant." ***Id.*** Appellant concludes that "[p]icking up a bag and moving it from one vehicle to another, without opening it, contradicts any inference the Commonwealth may be entitled to as the verdict winner." ***Id.*** at 17.

The Commonwealth argues Appellant's claim "is both inapposite and meritless" because "the evidence in fact established that he actually possessed the drugs." Commonwealth's Brief at 2. We agree that Appellant's issue lacks merit.

Before announcing its verdict, the trial court stated:

> All parties have agreed that I can proceed as the fact finder in this waiver trial in spite of my prior findings. So I must view this case in consideration of the evidence now being allowed in the hearing.
>
> In reviewing the testimony that has been incorporated, the evidence is no longer suppressed and it stands in this case. So as the testimony pertaining to that evidence, I have carefully considered the arguments of both counsel.

N.T., 12/8/21, at 49.

The trial court referenced Sergeant Myers' suppression hearing testimony in finding that Appellant conducted "an orchestrated delivery." *Id.* at 52. The court noted that both Sergeant Myers and Officer Slater "observed Appellant transfer the bag (later found to contain heroin) from [the Jeep] to Mr. Almanzar's car." TCO at 7. The court further found the heroin was "for distribution and not personal use" based on "the weight/amount of drugs, [and] individual packaging and labeling." *Id.* Pertinently, the trial court "did not find [Appellant's] version of events convincing or credible." *Id.*

Our review reveals no error, as the evidence was sufficient to sustain Appellant's conviction.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/22/2024